UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| BASALITE CONCRETE PRODUCTS, LLC, and PACIFIC COAST BUILDING PRODUCTS, INC.,<br><br>      Plaintiffs,<br><br>    v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and CHARTIS SPECIALTY INSURANCE COMPANY,<br><br>      Defendants.<br>_____/ | NO. CIV. 2:12-02814 WBS EFB<br><br><u>MEMORANDUM AND ORDER RE:<br>MOTION TO DISMISS</u> |

----oo0oo----

Plaintiffs Basalite Concrete Products, LLC ("Basalite"), and Pacific Coast Building Products, Inc. ("Pacific"), brought suit against defendants National Union Fire Insurance Company of Pittsburgh, PA, ("NUFIC"), and Chartis Specialty Insurance Company, ("Chartis"), alleging breach of the duty to defend in an underlying lawsuit brought by Keystone Retaining Wall Systems against plaintiffs (the "Keystone

1

Matter"). Defendants now move to dismiss the action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

I.    Relevant Facts and Procedural History

Plaintiffs are in the business of manufacturing and distributing hardscape products, including structural blocks, interlocking paving stones, wall systems, and retaining walls, as well as ornamental and garden products. (First Am. Compl. ¶ 22 ("FAC") (Docket No. 26).) NUFIC allegedly issued Pacific a general commercial liability insurance policy with an effective starting date of September 29, 2009. (Id. ¶ 17, Ex. A.) Chartis allegedly issued Basalite a general commercial liability insurance policy with an effective starting date of September 29, 2008. (Id. ¶ 18, Ex. B.) The policies have substantially similar terms and are referred to together as "the Policies" in plaintiffs' FAC. (Id. ¶¶ 19-21.)

    A.    The Policies

        1.    Personal and Advertising Injury Clause

Under the Policies, defendants agree to "pay those sums that the insured becomes legally obligated to pay as damages because of personal and advertising injury to which this insurance applies," and defendants "will have the right and duty to defend the insured against any suit seeking those damages." (Id. Ex. A at 7-8, Ex. B at 14.) In relevant part, "personal and advertising injury means injury . . . arising out of one or more of the following offenses: . . . (d) Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods,

2

products, or services; . . . (f) the use of another's advertising idea in your advertisement; [or] (g) infringing upon another's copyright, trade dress, or slogan in your advertisement." (Id. Ex. A at 40-41, Ex. B at 13.) "Advertisement" is defined as "a notice that is broadcast or published to the general market or specific market segments about [the insured's] goods, products, or services for the purposes of attracting customers." (Id. Ex. A. at 35, Ex. B at 11.)

The Policies contain two relevant exclusions to the "personal and advertising injury" clause. First, the Policies exclude personal and advertising injury "arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights." (Id. Ex. A at 9; Ex. B at 6.) This exclusion, however, does not apply "to infringement, in [the insured's] advertisement, of copyright, trade dress or slogan." (Id.)

Second, the Policies exclude personal or advertising injury "arising out of breach of contract." (Id. Ex. A at 8, Ex. B at 5.) This exclusion, however, does not apply to "an implied contract to use another's advertising idea in [the insured's] advertisement." (Id.)

### 2. Property Damage Clause

The Policies also provide that defendants will defend the insured against any suit seeking damages for "property damage." (Id. Ex. A at 1, Ex. B at 1.) "Property damage" is defined as "physical injury to tangible property" or "loss of use of tangible property that is not physically injured." (Id. Ex. A at 42, Ex. B at 13.) The property damage, however, must be

3

caused by an "occurrence," (id. Ex. A at 1, Ex. B at 1), which is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id. Ex. A at 40, Ex. B at 13).

### B. The Keystone Matter

On or about September 29, 2010, Keystone filed suit against plaintiffs in the United States District Court for the District of Minnesota, eventually filing a First Amended Complaint and a Second Amended Complaint. (FAC ¶¶ 23-24, Exs. C & D). The Keystone Matter included factual allegations that plaintiffs improperly used Keystone's trademarks and patents after breaching licensing agreements which granted plaintiffs the "the right and license to utilize the Know-How, Molds, Patent Rights, and Trademarks to manufacture, market and sell the Products." (Id. Ex. D ¶¶ 18-30, 54-74.) Keystone alleged that plaintiff breached the licensing agreement but continued to use Keystone's trademarks and patents after Keystone requested that they cease doing so. (Id. ¶¶ 54-74.) Keystone brought claims for breach of contract, trademark infringement, patent infringement, and violations of 15 U.S.C. § 1125(a) and (c). (Id. ¶¶ 75-508).

### C. Plaintiffs' Allegations and Procedural History

Plaintiffs allege that the pleadings in the Keystone Matter triggered a duty to defend under the Policies because the Keystone pleadings alleged facts that could potentially state claims for disparagement, slogan, and trade dress infringement in plaintiffs' advertising, as required for coverage under the "personal and advertising injury" clause. (FAC ¶¶ 25-41.)

4

1  Plaintiffs also appear to allege that the Keystone pleadings give
2  rise to a duty to defend under the "property damage" clause.
3  (Id. ¶¶ 26, 28.)
4      Plaintiffs allege to have first tendered the defense to
5  defendants on or about November 18, 2011, and defendants denied
6  the defense on or about January 23, 2012.  (Id. ¶¶ 42-43.)
7  Plaintiffs again allegedly tendered the defense on or about
8  August 22, 2012 and August 31, 2012, this time including
9  "approximately 1,200 pages of marketing materials, brochures, and
10 other advertisements" which "were the actual documents which
11 comprised of [sic] the subject matter of the Keystone Matter."
12 (Id. ¶ 45.)
13     Defendants allegedly failed to pay for plaintiffs'
14 defense in the Keystone matter, which led to plaintiffs incurring
15 over $1,000,000 in defense costs.  (Id. ¶ 55)  The Keystone
16 Matter was allegedly settled in excess of $1,500,000.  (Id. ¶
17 56.)
18     Plaintiffs bring a claim for declaratory relief on the
19 issue of defendants' duty to accept plaintiffs' tenders of
20 defense in the Keystone Matter.  (Id. ¶¶ 58-62.)  Pacific also
21 brings a breach of insurance contract claim against NUFIC, (id.
22 ¶¶ 63-68), and a claim for bad faith breach of the covenant of
23 good faith and fair dealing against the same, (id. ¶¶ 75-81).
24 Basalite brings similar claims against Chartis.  (Id. ¶¶ 69-74,
25 82-88.)
26     Defendants filed a motion to dismiss on January 8,
27 2013.  (Docket No. 10.)  In ruling upon that motion, as for
28 plaintiffs' allegations that a duty to defend arose under the

5

Policies' personal and advertising injury clause, the court held that "plaintiffs do not adequately allege that the pleadings in the underlying Keystone Matter included facts related to advertisements," and "do not allege that they ever submitted [the extrinsic] materials to defendants when tendering their defense and thus fail to allege how defendants knew of these materials at the time of tender." (Feb. 13, 2013 Order at 2-3 (Docket No. 22).) The court also held that plaintiffs failed to adequately allege a duty to defend under the property damage clause, since "plaintiffs fail to allege how the underlying Keystone Matter involved property damage due to an occurrence." (Id. at 4.) The court accordingly dismissed plaintiffs' claims with leave to amend, (id.), and plaintiffs filed the FAC on March 4, 2013, (Docket No. 26).

II. Discussion

        To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). In deciding whether a plaintiff has stated a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416

6

1  U.S. 232, 236 (1974), overruled on other grounds by Davis v.
2  Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322
3  (1972).
4      A.   Duty to Defend Arising from the Face of the Keystone
5           Pleadings
6           Under California law, a "'liability insurer owes a
7  broad duty to defend its insured against claims that create a
8  potential for indemnity . . . . [T]he carrier must defend a suit
9  which potentially seeks damages within the coverage of the
10 policy.'"  Hudson Ins. Co. v. Colony Ins. Co., 624 F.3d 1264,
11 1267 (9th Cir. 2010) (quoting Montrose Chem. Corp. of Cal. v.
12 Superior Court, 6 Cal. 4th 287, 295 (1993)) (alterations in
13 original).  The duty to defend, however, is not unlimited, but
14 rather "is measured by the nature and kinds of risks covered by
15 the policy."  Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 19
16 (1993).  While an "insurer must furnish a defense when it learns
17 of facts from any source that create the potential of liability
18 under its policy," CNA Cas. of Cal. v. Seaboard Sur. Co., 176
19 Cal. App. 3d 598, 606 (1st Dist. 1986), "'the insured may not
20 speculate about unpled third party claims to manufacture
21 coverage,'" Bock v. Travelers Property Cas. Ins. Co., 465 Fed.
22 App'x 623, 624 (9th Cir. 2012) (quoting Hurley Constr. Co. v.
23 State Farm Fire & Cas. Co., 10 Cal. App. 4th 533, 538 (2d Dist.
24 1992)).
25          The pleadings in the Keystone Matter include factual
26 allegations that specific trademarks and patents were infringed
27 in connection with the breach of a licensing agreement between
28 plaintiffs and Keystone.  The Keystone complaint lists specific

7

trademarks and patents that were allegedly infringed, (see FAC Ex. D. ¶¶ 64, 70), and contains separate claims for alleged infringement of each trademark and patent, (id. ¶¶ 90-254, 278-508), as well as unfair competition and dilution claims based on use of the trademarks, (id. ¶¶ 255-277). Keystone also brought breach of contract claims in connection with the licensing agreement. (Id. ¶¶ 75-89.)

These patent, trademark, and breach of contract claims in the Keystone pleadings are excluded from coverage under the Policies. (FAC Ex. A at 8-9, Ex. B at 5-6.) Therefore, no duty to defend arose from the causes of actions alleged in the Keystone Matter. See Purplus Inc. v. Hartford Cas. Ins., Civ. No. 12-03689 JSW, 2013 WL 1149768, at *6 (N.D. Cal. Mar. 19, 2013) ("The Adobe Complaint contained claims for infringement of Adobe software and trademark infringement of Adobe trademarks. As Adobe concedes, these claims are not covered by the Policy. Thus, the legal causes of action in the Adobe Complaint did not trigger Hartford's duty to defend.").

"However, factual allegations in the underlying complaint may trigger an insurer's duty to defend, even if the underlying 'technical legal causes of action' do not reveal a potential for coverage." Id. (citing Hudson, 624 F.3d at 1267). Here, plaintiffs allege that the factual allegations in the underlying Keystone pleadings give rise to "personal or advertising injury" by stating potential claims for slogan infringement, trade dress infringement, and disparagement in plaintiff's advertising. (FAC ¶¶ 27, 30-33, 35-40.)

        1.    <u>Personal or Advertising Injury</u>

8

1      The factual allegations in the Keystone pleadings are
2 not sufficient to establish "[o]ral or written <u>publication</u>, in
3 any manner, of material that slanders or libels a person or
4 organization or disparages a person's or organization's goods,
5 products, or services; . . . (f) the use of another's advertising
6 idea <u>in [plaintiffs'] advertisement</u>; [or] (g) infringing upon
7 another's copyright, trade dress, or slogan <u>in [plaintiffs']</u>
8 <u>advertisement</u>," as required to allege a "personal or advertising
9 injury" under the Policies. (<u>Id.</u> Ex. A at 40-41, Ex. B at 13
10 (emphasis added).)
11      "'[A]dvertising injury' must have a causal connection
12 with the insured's advertising activities before there can be
13 coverage." <u>Bank of the West v. Superior Court</u>, 2 Cal. 4th 1254,
14 1277 (1992). "In other words, any of the policy's enumerated
15 advertising injuries must be <u>caused by</u> [the plaintiffs']
16 advertising in order to satisfy <u>Bank of the West</u>'s nexus
17 requirement." <u>Simply Fresh Fruit, Inc. v. Cont. In. Co.</u>, 94 F.3d
18 1219, 1221 (9th Cir. 1996).
19      Even when a complaint uses the word "advertising" in
20 framing a trademark cause of action, "references to the term
21 'advertisement' do not transform trademark infringement
22 allegations into advertising injuries." <u>Purplus</u>, 2013 Wl 1149768
23 at *6; <u>see also</u> <u>Microtec Research, Inc. v. Nationwide Mut. Ins.</u>
24 <u>Co.</u>, 40 F.3d 968, 971 (9th Cir. 1994) (holding that no
25 "advertising injury" or "personal injury claim" was potentially
26 stated when the third party pleadings "[did] not aver that
27 Microtec had said anything negative about [the third party],"
28 "[did] not allege that Microtec used stolen code in its ads, as

9

1  one might use a copyrighted piece of music in an ad," and "the
2  harm . . . [was] allegedly cause by misappropriation of the code,
3  not by the advertising itself"); Bank of the West, 2 Cal. 4th at
4  1275 (explaining that "a claim of patent infringement does not
5  'occur in the course . . . of advertising activities' within the
6  meaning of the policy even though the insured advertises the
7  infringing product, if the claim of infringement is based on the
8  sale or importation of the product rather than the
9  advertisement").

10          Here, the Keystone pleadings' passing reference to
11 "Know-How," which is defined to include "technical data, trade
12 secrets, designs, plans, specifications, methods, processes,
13 systems, manufacturing and installation procedures, marketing
14 strategies, and any other information and documentation . . .
15 useful in the manufacture, use installation, and/or sale of the
16 product," (FAC Ex. D ¶ 57 (emphasis added)), is not sufficient to
17 state an advertising injury.  Nor is a single allegation that
18 "unauthorized use of the Trademarks is commercial advertising
19 that misrepresents the nature, characteristics, qualities, or
20 origin of the Trademarks," (id. Ex. B at ¶ 257).  See Purplus,
21 2013 WL 1149768 at *6.  In the Keystone pleadings, "the harm . .
22 . is allegedly caused by misappropriation of the [trademarks and
23 patents], not by the advertising itself."  See Microtec, 40 F.3d
24 at 971.  "A party cannot excise particular words or phrases from
25 their context so as to manufacture coverage."  Purplus, 2013 WL
26 1149768 at *6.

27          Since the Keystone Matter did not include factual
28 allegations of "personal and advertising injury" under the

10

policy, the duty to defend did not rise from the face of the Keystone pleadings.  Further, as the court will explain below, plaintiffs' other arguments in support of coverage--namely, that the underlying Keystone pleadings included factual allegations stating potential claims for slogan infringement, trade dress infringement, and disparagement--are unpersuasive.

                a.   <u>Slogan Infringement</u>

A slogan is defined as a "brief attention-getting phrase used in advertising or promotion or a phrase used repeatedly, as in promotion."  <u>Palmer v. Truck Ins. Exch.</u>, 21 Cal. 4th 1109, 1120 (1999) (emphasis, internal quotation marks and citations omitted).  Plaintiffs allege that "Trademark" was defined in the licensing agreement and Keystone pleadings as "'Keystone' . . . as well as other trademarks, trade names, or service marks owned by Licensor," and that this definition is broad enough to include potential claims for trade dress and slogan infringement in plaintiffs' advertising.  (FAC ¶¶ 29-30.) Specifically, plaintiffs argue that the term "Trademark" as used in the Keystone pleadings included the phrase "Retaining Excellence," which they argue qualifies as a slogan.  (Pls.' Opp'n at 13 (Docket No. 32).)

Plaintiffs provide no legal support for their assertion that "the term 'trade name' and/or 'service marks' are commonly understood to appear and be included within 'trade dress' and/or 'slogan.'" (FAC ¶ 30.)  Plaintiffs' argument is further undermined by the fact that Keystone specifically listed the trademarks allegedly infringed, (FAC Ex. D ¶ 64), but nowhere mentions the phrase "Retaining Excellence" and does not include

11

factual allegations as to how the phrase was used in advertising.

The Keystone Matter is therefore distinguishable from Hudson Insurance Co.  In Hudson, the Ninth Circuit found that a potential claim for slogan infringement existed--therefore giving rise to a duty to defend--when the complaint in the underlying suit specifically alleged that a website advertised a counterfeit jersey that "read[] 'Steel Curtain' across the back."  See Hudson, 624 F.3d at 1268-69.  The Ninth Circuit approved of the district court's explanation that a potential claim for slogan infringement existed because "[a] fair reading of the [underlying complaint] reveals that 'Steel Curtain' is used to promote fan loyalty to the Steelers . . . and a subset of Steeler players in particular."  Id. at 1268.  Here, however, neither "Retaining Excellence" or any other potential slogan appears in the Keystone complaint.

Plaintiffs therefore fail to plausibly allege a duty to defend based upon a potential claim for slogan infringement in plaintiffs' advertising.

        b.    Trade Dress

"'Trade dress refers generally to the total image, design, and appearance of a product and may include features such as size, shape, color, color combinations, texture or graphics.'"  Globefill Inc. v. Elements Spirits, Inc., 473 Fed. App'x 685, 686 (9th Cir. 2012) (quoting Clicks Billiards v. Sixshooters, Inc., 251 F.3d 1252, 1257 (9th Cir. 2001)).  "To sustain a claim for trade dress infringement, [the plaintiff] must prove: (1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because

12

it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." Clicks Billiards, 251 F.3d at 1258.

Plaintiffs allege that Keystone's claims under 15 U.S.C. § 1125(a) and (c) stated potential claims for trade dress infringement. (FAC ¶ 40; see Pls.' Opp'n at 9-11.) The Keystone pleadings, however, do not include any factual allegations regarding a product's "total image, design, or appearance," nor do they include any factual allegations concerning a product's non-functionality. See Clicks Billiards, 251 F.3d at 1258. Keystone's claims under 15 U.S.C. § 1125(a) and (c) repeatedly allege violation due to plaintiffs' "use of the Trademarks," not trade dress. (See, e.g., FAC Ex. D ¶ 256 ("Defendant's unauthorized use of the Trademarks in commerce has caused confusion . . . ."), ¶ 258 ("Defendant's unauthorized use of the Trademarks was calculated to cause confusion"), ¶ 272 ("Defendant's unauthorized use of the Trademarks causes a dilution of the distinctive quality of the Trademarks.").)[1] To hold that these allegations are sufficient to state a claim for trade dress would be "speculat[ing] about unpled third party claims to manufacture coverage," Bock, 465 Fed. App'x at 624,

---

[1] The Keystone pleadings under 15 U.S.C. § 1125 (a) and (c) also lack any allegations of a "brief attention-getting phrase used in advertising or promotion," Palmer, 21 Cal. 4th at 1120, and thus fail to state a potential claim for slogan infringement as well.

13

which the court declines to do.[2]

Plaintiffs therefore fail to plausibly allege a duty to defend based upon a potential claim for trade dress infringement in plaintiffs' advertising.

### c. Disparagement

Finally, plaintiffs allege that the Keystone complaint pleads facts giving rise to disparagement in plaintiffs' advertising. "Under California law, 'disparagement' covers claims for trade libel." Cort v. St. Paul Fire & Marine Ins. Comps., Inc., 311 F.3d 979, 986 (9th Cir. 2002). "Trade libel differs from libel in that an 'action for defamation is designed to protect the reputation of the plaintiff, and the judgment vindicates that reputation, whereas the action for disparagement is based on pecuniary damage and lies only where such damage has been suffered.'" Id. (quoting Microtec, 40 F.3d at 972). When an underlying complaint for infringement of a design patent "only allege[s] that [the plaintiff] imitated its product, thereby infringing its patent," "it does not follow that . . . it is, therefore, disparaging it. In point of fact, it's quite the opposite--as has been oft said: imitation is the highest form of flattery." Homedics, Inc. v. Valley Forge Ins. Co., 315 F.3d 1135, 1142 (9th Cir. 2003); see also Everest & Jennings, Inc. v. Am. Motorists Ins. Co., 23 F.3d 226, 230 (9th Cir. 1994) ("E & J

---

[2] Plaintiffs argue that claims under 15 U.S.C. § 1125 are reserved for infringement of trade dress and that a trademark may not form the basis for such a claim. Plaintiffs, however, appear to be mistaken on this point. See, e.g., Visa Intern. Serv. Ass'n v. JSL Corp., 610 F.3d 1088, 1089-90 (9th Cir. 2010) (§ 1125(c) claim based upon use of the "Visa" mark); Toho Co., Ltd. v. Sears, Roebuck & Co., 645 F.2d 788, 790 (9th Cir. 1981) (§ 1125(a) claim based upon use of the "Bagzilla" mark).

14

1  argues that allegations of patent infringement necessarily imply
2  a disparagement of title.  If this were true, all claims of
3  patent infringement would fit within a standard personal injury
4  clause.  This interpretation would permit coverage far exceeding
5  the objectively reasonable expectations of the insured based on
6  the explicit language of the policy.").

7        In Microtec, for example, the Ninth Circuit affirmed
8  that no potential claim for disparagement existed when the
9  allegations in the underlying complaint were that the plaintiff
10 "palmed off" the third party's compilers as the plaintiff's own,
11 "not that [the plaintiffs] made a false or injurious statement
12 about the quality of [the third party's] compilers."  Microtec,
13 40 F.3d at 972.  Here, as in Microtec, the allegations in
14 Keystone's underlying complaint are that plaintiffs "passed off"
15 Keystone's products as plaintiffs' own after breaching the
16 licensing agreement, (FAC Ex. D ¶ 260), "not that [plaintiffs]
17 made a false or injurious statement about the quality" of
18 Keystone's products.  Microtec, 40 F.3d at 972.  Thus, the
19 underlying Keystone pleadings did not state a potential claim for
20 disparagement.

21        Plaintiffs therefore fail to plausibly allege that the
22 Keystone Matter's pleadings included factual allegations
23 sufficient to trigger a duty to defend under the Policies'
24 "personal and advertising injury" clause.

25        2.   Property Damage Clause

26        For coverage under the "property damage" clause of the
27 Policies, the alleged property damage must be caused by an
28 "occurrence," (id. Ex. A at 1, Ex. B at 1), which is defined as

15

an "accident, including continuous or repeated exposure to substantially the same general harmful conditions," (id. Ex. A at 40, Ex. B at 13). "California courts have held that for there to be an accident, the cause, as well as the result, must be unexpected, unusual, and unforeseen." UMG Recordings, Inc. v. Am. Home Assur. Co., 321 Fed. App'x 553, 554 (9th Cir. 2008) (citing Merced Mut. Ins. Co. v. Mendez, 213 Cal. App. 3d 41, 50 (5th Dist. 1989)).

Here, plaintiffs allege that the underlying Keystone pleadings "alleged that Plaintiffs improperly used and retained Keystone's property in the form of 'molds' (i.e., plastic, metal or wooden casts used for shaping concrete stone, pavers, and bricks) used as part of its operations." (FAC ¶ 26.) The Keystone pleadings, however, clearly allege that plaintiffs' withholding of the molds after breaching the licensing agreement was an intentional act, not an accident. See UMG Recordings, 321 Fed. App'x at 555 (finding no duty to defend under a property damage clause when the underlying complaint alleged that plaintiffs withheld a master recording of an album, "which is an intentional act"). Thus, plaintiffs fail to plausibly allege that the Keystone pleadings included facts of "property damage" which would give rise to a duty to defend under the Policies.

Plaintiffs fail to plausibly allege that the factual allegations in the Keystone Matter established defendants' duty to defend under the "personal or advertising injury" clause or the "property damage" clause. Thus, any duty to defend would have to arise from extrinsic facts. See Hyundai Motor Am. v. Nat. Union Fire Ins. Co., 600 F.3d 1092, 1099 n.2 (9th Cir. 2010)

16

("Even if the duty to defend is not evidence on the face of the complaint, the duty to defend nevertheless arises if the extrinsic facts suggest that the claim may be covered.").

### B. Duty to Defend Arising from Submission of Extrinsic Materials

"The determination of potential coverage is made at the time the lawsuit is tendered to the insurance company." The Upper Deck Co., LLC v. Fed. Ins. Co., 358 F.3d 608, 612 (9th Cir. 2004) (citing Gunderson v. Fire Ins. Exch., 37 Cal. App. 4th 1106, 1114 (1st Dist. 1995)). "Once an insurer determines, on the basis of the complaint and the facts known to it at the time of tender, that there is no potential for coverage, the insurer does 'not have a continuing duty to investigate or monitor the lawsuit to see if the third party made some new claim, not found in the original lawsuit.'" Id. at 613 (quoting Gunderson, 37 Cal. App. 4th at 1117). "If new extrinsic evidence raises a potential covered claim, the insured should submit a new tender of defense." Id. "In the absence of a new tender, the insurer is not charged with knowledge of new extrinsic facts; nor is it under an independent obligation to investigate the potential for coverage." Id. (citing Gunderson, 37 Cal. App. 4th at 1117).

Generally, "[t]he duty to defend ends with the conclusion of the action . . . ." Republic W. Ins. Co. v. Stardust Vacation Club, Civ. No. 02-2318 WBS KJM, 2003 WL 24215016, at *2 (E.D. Cal. June 3, 2003) (Shubb, J.) (citing Buss v. Superior Court of L.A. Cnty., 16 Cal. 4th 35, 46 (1997)). As explained by the California Supreme Court, "the insurer's duty to defend arises whenever the third party complaint and/or the

17

available extrinsic facts suggest, under applicable law, the possibility of covered claims." Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 657 (2005). "The duty to defend then continues <u>until the third party litigation ends</u>, unless the insurer sooner proves . . . that the potential for coverage which previously appeared cannot possibly materialize, or no longer exists." Id. (emphasis added).

Here, the FAC alleges that plaintiffs first tendered the defense and indemnity of the underlying Keystone Matter on or about November 18, 2011, and defendants first denied the tender on or about January 23, 2012. (FAC ¶¶ 42-43.) For the reasons explained above, this tender did not give rise to the duty to defend. Plaintiffs again allegedly tendered the defense, this time offering extrinsic material such as advertising materials that allegedly "were the actual documents which comprised the subject matter of the Keystone Matter," on or about August 22 and August 31, 2012. (Id. ¶¶ 44-45.) These materials allegedly contained slogans and copyrighted material. (Id. ¶ 45.) The underlying Keystone Matter, however, was dismissed due to settlement on August 13, 2012, (Defs.' Req. for Judicial Notice Ex. H),[3] <u>before</u> plaintiffs tendered the defense with extrinsic materials.

Even assuming that the extrinsic material offered by

---

[3] The court takes judicial notice of filings and orders in the underlying Keystone Matter, as their accuracy can be "readily determined from sources whose accuracy cannot reasonably be questioned," but the court does not accept the truth of matters asserted therein. Fed. R. Evid. 201; see Liberty Mut. Ins. Co. v. Indian Harbor Ins. Co., No. 11-CV-0624 BEN (NLS), 2012 WL 642890, at *2 n.1 (S.D. Cal. Feb. 28, 2012).

18

plaintiffs in support of their tender could give rise to the duty to defend, plaintiffs provided the material after the Keystone Matter terminated. Since the Keystone pleadings did not, on their face, give rise to a duty to defend, and any such duty expired at the conclusion of the Keystone litigation, plaintiffs' tender of extrinsic material after the conclusion of the lawsuit did not trigger a duty to defend. See Monticello Ins. Co. v. Essex Ins. Co., 162 Cal. App. 4th 1376, 1388 (2d Dist. 2008) ("We conclude the Defect List plays no role in our duty to defend analysis because Monticello failed to establish said document was tendered to Essex during the pendency of the underlying action.").

Furthermore, defendants did not breach a duty to investigate after plaintiffs submitted their first tender because "[i]n the absence of a new tender, the insurer is not charged with knowledge of new extrinsic facts; nor is it under an independent obligation to investigate the potential for coverage." Upper Deck, 358 F.3d at 613.

Plaintiffs fail to plausibly allege that the pleadings in the Keystone Matter gave rise to a duty to defend on their face and also fail to plausibly allege that defendants knew of extrinsic facts giving rise to the duty to defend before the conclusion of the Keystone Matter. Accordingly, the court will grant defendants' motion to dismiss all claims in the FAC.[4]

---

[4] Similarly to the court's holding in the February 13, 2012 Order, because plaintiffs fail to plead a duty to defend in the Keystone Matter, plaintiffs' claims for declaratory judgment, breach of contract, and breach of the covenant of good faith and fair dealing must all be dismissed. (Feb. 13, 2013 Order at 4

19

1         While leave to amend must be freely given, the court is
2    not required to permit futile amendments.  See DeSoto v. Yellow
3    Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992); Reddy v.
4    Litton Indus., Inc., 912 F.2d 291, 296-97 (9th Cir. 1990); Rutman
5    Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir.
6    1987); Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau,
7    701 F.2d 1276, 1293 (9th Cir. 1983).  Because the court has
8    already permitted plaintiffs to amend their pleadings and it
9    appears that plaintiffs are unable to state a viable claim
10   against defendants, all claims will be dismissed with prejudice
11   and without leave to amend.
12        IT IS THEREFORE ORDERED, that defendants' motion to
13   dismiss be, and the same hereby is, GRANTED.
14        The Clerk of the Court is directed to enter a judgment
15   of dismissal in accordance with this Order and close the file.
16   DATED:  May 16, 2013

                         WILLIAM B. SHUBB
                         UNITED STATES DISTRICT JUDGE

---

(citing Rosen v. Nations Title Ins. Co., 56 Cal. App. 4th 1489, 1496 (2d Dist. 1997)).)
        In addition, while plaintiffs do not argue in support of the duty to indemnify in their briefs, the FAC repeatedly alleges that defendants breached both the duty to defend and the duty to indemnify.  (See FAC ¶¶ 59-60.)  "Where there is no duty to defend, there cannot be a duty to indemnify."  Certain Underwriters at Lloyd's of London v. Superior Court, 24 Cal. 4th 945, 958 (2001).  Thus, to the extent plaintiffs' claims are based upon the duty to indemnify, they will be dismissed.

20